[Civ. No. 27957. First Dist., Div. One. July 19, 1971.]

In re D.J.B., a Person Coming Under the Juvenile Court Law.
HIRSCH E. BAYES, as Chief Probation Officer, etc., Plaintiff and Respondent, v.
D.J.B., Defendant and Appellant.

## COUNSEL

Paul Ligda, Public Defender, Jon P. Siegel and Robert E. Barnett, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Joyce F. Nedde, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—This is an appeal from an order of the juvenile court adjudging appellant a ward of the court and ordering that she be committed

to the custody of the probation officer for placement in a foster home or institution.

The adjudication made by the juvenile court was based on a petition alleging that appellant, a person under 21 years of age, came within the provisions of section 601 of the Welfare and Institutions Code[1] in that she was beyond the control of her father, having left her father's home without his consent on or about September 12, 1969.[2]

At the jurisdictional hearing the following colloquy occurred between the court and the public defender representing appellant: "MR. LIGDA [public defender]: . . . as to the petition, we will admit everything including the fact that on or about September 12, 1969, she left her father's home, but denies that allegation that as a matter of law she was beyond the control of her father. We would submit it on that. THE COURT: Well, admittedly, the allegation leaves a lot to be desired as far as any information for the court as far as the overall control or lack of control. But it does indicate that at least on September 12, 1969, she was beyond his control at that time. I am going to accept jurisdiction at this time. MR. LIGDA: The petition is sustained, your Honor? THE COURT: Yes. Let me read the report here, I may react differently in a moment." The court then considered the juvenile probation department's file, which included the probation officer's report and a psychiatric evaluation by Dr. Normington of the Woodland Medical Clinic.

In considering this contention we observe that the record is unclear as to whether the court made its determination that appellant came within its jurisdiction solely on the basis of the evidence that appellant left her father's home without his consent on or about September 12, 1969, or whether such determination was also made on the basis of the probation officer's report and the psychiatric evaluation. If the court in fact used these reports in determining that appellant came within its jurisdiction, that finding cannot be sustained.

■ The review by the juvenile court of a probation report or social study prior to or during the jurisdictional hearing constitutes prejudicial error even though no objection is made at the juvenile court hearing to the court's premature use of such report or social study. (*In re Gladys R.,*

---

[1]Unless otherwise indicated, all references are to the Welfare and Institutions Code.

[2]Section 601 provides: "Any person under the age of 21 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, custodian or school authorities, or who is beyond the control of such person, or any person who is a habitual truant from school within the meaning of any law of this State, or who from any cause is in danger of leading an idle, dissolute, lewd, or immoral life, is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court."

1 Cal.3d 855, 859-862 [83 Cal.Rptr. 671, 464 P.2d 127]; *In re Corey,* 266 Cal.App.2d 295, 296-299 [72 Cal.Rptr. 115]; *In re Joseph G.,* 7 Cal.App.3d 695, 699-701 [87 Cal.Rptr. 25]; *In re Steven F.,* 270 Cal.App. 2d 603, 604-605 [75 Cal.Rptr. 887].) The cases which have enunciated this principle hold that the bifurcated juvenile court procedure prescribed in sections 701,[3] 702,[4] and 706[5] is designed to make certain that the jurisdictional order is made *before* the consideration of any social study or probation report containing material irrelevant to acts or circumstances which are alleged to bring the minor within the jurisdiction of the juvenile court.

In *In re Gladys R., supra,* we find the following pertinent statement: "The history of Welfare and Institutions Code sections 701, 702, and 706 clearly indicates that the Legislature intended to create a bifurcated juvenile court procedure in which the court would first determine whether the facts of the case would support the jurisdiction of the court in declaring a wardship and *thereafter* would consider the social study report at a hearing on the appropriate disposition of that ward. This procedure affords a necessary protection against the premature resolution of the jurisdictional issue on the basis of legally incompetent material in the social report." (1 Cal.3d at pp. 859-860.)

The People contend that the bifurcated procedure should be limited to section 602 proceedings.[6] We find no basis for this distinction between sections 601 and 602 in sections 701, 702, and 706. Section 701 provides, in part: ". . . the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602 . . . ." Section

---

[3]Section 701 provides: "At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; . . ."

[4]Section 702 provides that "If the court finds that the minor is [within its jurisdiction], it shall make and enter its findings and order accordingly and shall then proceed to hear evidence on the question of the proper disposition to be made of the minor. Prior to doing so, it may continue the hearing, if necessary, to receive the social study of the probation officer . . . ."

[5]Section 706 provides that "After finding that a minor is a person described in Section 600, 601, or 602, the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor made by the probation officer . . . ."

[6]Section 602 provides: "Any person under the age of 21 years who violates any law of this State or of the United States or any ordinance of any city or county of this State defining crime or who, after having been found by the juvenile court to be a person described by Section 601, fails to obey any lawful order of the juvenile court, is within the jurisdiction of the juvenile court, which may adjudge said person to be a ward of the court."

702 provides, in part: "After hearing such evidence, the court shall make a finding, . . . whether or not the minor is a person described by Sections 600, 601, or 602." Finally, section 706 provides: "After finding that a minor is a person described in Sections 600, 601, or 602, the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor made by the probation officer and such other relevant and material evidence as may be offered, . . ." These statutes make it abundantly clear that proceedings pursuant to sections 601 and 602 are treated alike. We observe, moreover, the language in *In re Gladys R., supra,* that the "new statutory scheme of Welfare and Institutions Code sections 701, 702 and 706 must apply to *all* juvenile proceedings, . . ." (1 Cal.3d at p. 860.) (Italics added.)

██  Assuming that under the state of the record it can be said that the court made its jurisdictional determination solely on the evidence that appellant left her father's home without his consent on or about September 12, 1969, we must hold that such a single instance of misbehavior cannot, as a matter of law, sustain a finding that appellant was a person who was beyond the control of her father.

Although a single instance of conduct is sufficient to make a minor subject to the jurisdiction of the juvenile court where he violates a law or fails to obey a lawful order of the court after he has been found to be a person described in section 601 (see *In re Dennis M.,* 70 Cal.2d 444, 450 [75 Cal.Rptr. 1, 450 P.2d 296]; *In re David S.,* 12 Cal.App.3d 1124, 1127 [91 Cal.Rptr. 261]; *In re Rita P.,* 12 Cal.App.3d 1057, 1060 [95 Cal.Rptr. 430]), this rule does not necessarily apply to proceedings pursuant to section 601 where the standards of conduct are not carefully delineated. (*In re Rita P., supra; In re David S., supra.*)

In *In re David S., supra,* it was pointed out that under the disjunctive language of section 601 a finding that a minor " 'is beyond the control' " of his parent may be predicated on a single act " 'if sufficiently serious.' " (12 Cal.App.3d at pp. 1127-1128.) Accordingly, the real issue where this particular standard of conduct is involved is whether under the facts of the particular case the juvenile court could reasonably conclude that a single act was sufficiently serious to indicate that the minor was "beyond control."

In the instant case the only evidence on which the court could base its finding of jurisdiction was the public defender's admission that, on or about September 12, 1969, appellant left her father's home without his consent. This evidence, without more, is not of such a substantive nature as to be indicative of the loss of parental control which would justify official intervention. No evidence was introduced in regard to the length of time which

appellant stayed away from home. Nor was any evidence introduced as to whether appellant intended to remain away from home for any length of time. The evidence only established that on one particular day appellant disobeyed her father by leaving home. Such evidence is insufficient to support a finding of jurisdiction under section 601.

The order appealed from is reversed.

Sims, J., and Elkington, J., concurred.