**In the Interest of Charles Hanlen STORM, Appellant.**

**No. 2–57024.**

Supreme Court of Iowa.

Nov. 13, 1974.

Smith, Peterson, Beckman, Willson & Peterson, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., and Lorna Lawhead Williams, Sp. Asst. Atty. Gen., for appellee.

Heard before MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

UHLENHOPP, Justice.

The question in this case is whether the trial court properly ordered the sheriff of Pottawattamie County, Iowa, to deliver Charles Hanlen Storm, age 19, to a representative of the California Youth Authority for return to that state under the interstate juvenile compact, § 231.14, Code 1973.

Charles was born June 20, 1954. While living in California he became involved with the law. On December 11, 1967, when Charles was 13, the California juvenile court found him to be within § 602 of the California Welfare & Institutions Code, adjudged him a ward of the court, and committed him to the California Youth Authority. That court has not since modified or set aside its order. The order constitutes an adjudication of delinquency. In re S, 10 Cal.App.3d 944, 89 Cal.Rptr. 685.

From that time to the present, § 607 of the California Welfare & Institutions Code has provided in pertinent part, "The court may retain jurisdiction over any person who is found to be a ward or dependent child of the juvenile court until such ward or dependent child attains the age of 21 years." The California Supreme Court, speaking through Justice Traynor, construed § 607 to mean, "The jurisdiction of the juvenile court over a ward continues until he becomes twenty-one or until the court is satisfied that he has reformed or that further

supervision under the law is unnecessary or inadvisable. Welfare and Institutions Code, § 750 [now § 607]. It may [from time to time] modify or set aside its orders concerning him. . . . When defendant was declared a ward of the juvenile court, he became subject to its continuing jurisdiction." People v. Sanchez, 21 Cal.2d 466, 470–471, 132 P.2d 810, 813.

On December 12, 1972, Charles signed a parole agreement with the Youth Authority, specifying certain conditions. The agreement recited, "I also know that I can be under the control of the Youth Authority, under my current commitment, until 6/20/75" (he would then become 21). The Youth Authority has not since terminated the parole or released Charles from it.

In March 1973, Charles again became involved with the law in California. The Youth Authority charged him with violating three conditions of his parole agreement. Before disposition of those charges, Charles absconded. On August 31, 1973, local authorities apprehended him in Pottawattamie County, Iowa. He was then 19.

Both California and Iowa have in force the interstate juvenile compact. Code 1973, § 231.14; Cal.Welf. & Inst.Code, § 1300. The California Youth Authority, proceeding in the Pottawattamie juvenile court under article V of the compact, requisitioned the return of Charles. The court appointed an attorney to represent him.

Charles objected to the proceeding on the grounds that (1) the Pottawattamie juvenile court had no jurisdiction and (2) the interstate compact creates an unconstitutional classification of juveniles for interstate transfer purposes.

After a hearing, the juvenile court granted the requisition. Charles appealed, asserting the same two grounds here.

I. *Jurisdiction.* Article V(a) of the compact states that the demanding state (California) shall present its requisition to the "appropriate court" of the responding state (Iowa). That court then orders the "delin-

quent juvenile" taken into custody. The officer brings the juvenile before that court, which informs him of the demand from the other state, appoints counsel, and allows a reasonable time for testing the legality of the proceeding. If that court then finds the proceedings proper, it delivers the juvenile over to the representative of the demanding state.

Article III of the compact contains the definitions applicable to the whole compact. The article states that " 'court' means any court having jurisdiction over delinquent, neglected or dependent children". This of course would be our juvenile court. Cf. Matter of Chin v. Wyman, 41 Misc.2d 641, 246 N.Y.S.2d 306 (concluding that the appropriate court in New York is the family court).

Charles contends, however, that while the appropriate court is the juvenile court, such court has no authority to act in this instance because he, the subject of the proceeding, is 19 and the Iowa juvenile court has jurisdiction only over persons under 18.

Charles relies on various sections of chapter 232 of the Iowa Code. He cites § 232.-2(3) which defines a "child" as "a person less than eighteen years of age"; § 232.63 which provides that the juvenile court has exclusive original jurisdiction of proceedings "concerning any child alleged to be delinquent"; § 232.67 which directs that the juvenile court ordinarily retains jurisdiction until "the minor becomes eighteen years of age"; and § 232.36 which requires that juvenile court orders ordinarily be enforced until the minor becomes 18.

The difficulty with this line of reasoning is that the cited sections have reference to domestic cases—Iowa juvenile cases. Had Charles at age 19 been brought before the Pottawattamie juvenile court under chapter 232 on a charge of delinquency here, that court would not have had authority to act as such. But Iowa is not seeking to have Charles adjudged delinquent. The juvenile proceeding occurred in California; Iowa is merely the responding state in a compact proceeding for the return of the person. We therefore look to § 231.1 of the Code, which establishes the Iowa juvenile court, and to the compact.

Section 231.1 of the Code provides:

There is hereby established in each county a juvenile court within the district court, which, shall have and exercise the jurisdiction and powers *provided by law*. (Italics added.)

The juvenile compact is part of *the Iowa law*, having been adopted by the General Assembly and approved by the Governor in 1965. 61 G.A. ch. 214, § 1. The question therefore is whether the compact, as Iowa law, encompasses a youth such as Charles, thus giving the juvenile court jurisdiction.

The preamble of the compact states that the compact "shall be reasonably and liberally construed" to carry out the "non-criminal, reformative and protective policies" regarding juveniles.

While article V, under which this proceeding falls, allows the return of a "delinquent juvenile," it does not define those two words. But article III, the general definitions article, states that " 'delinquent juvenile' means any juvenile who has been adjudged delinquent and who, at the time the provisions of this compact are invoked, is still subject to the jurisdiction of the court that has made such adjudication or to the jurisdiction or supervision of an agency or institution pursuant to an order of such court. . . ." Charles has been adjudged delinquent and is still subject to the jurisdiction of the California juvenile court which adjudicated delinquency and to the supervision of the California Youth Authority.

Is Charles a "juvenile"? That word is not defined in the compact except in article IV, which relates to children who run away from parents or custodians. But that definition refers to the word juvenile "as used in this Article" (article IV), and the present proceeding is not under article IV. We thus look to the meaning of "juvenile" ac-

cording to the "approved usage of the language." Code 1973, § 4.1(2). When we do so we find that "juvenile" means "a young person," which Charles is. Webster's Third New International Dictionary (1966).

 Construing the compact reasonably and liberally, we hold that a person in Charles' situation comes within its terms. This means that the Pottawattamie juvenile court had jurisdiction. We thus reject Charles' first ground of appeal.

II. *Constitutionality.* Charles' second ground is that the compact separates juveniles, who are under the compact, from adults, who are under extradition—in Iowa, chapter 759 of the Code. He asserts that this different treatment of youth denies him equal protection of the law, contrary to § 6, Article I of the Iowa Constitution and § 1, Amendment 14 to the United States Constitution.

Charles is right that juveniles and adults are under different laws in respect to interstate transfer. But the whole juvenile law is different from adult criminal law. See Wissenburg v. Bradley, 209 Iowa 813, 229 N.W. 205. The question is not whether a difference exists but whether the difference is constitutionally impermissible.

This court stated in Brightman v. Civil Service Commission of Des Moines, 204 N.W.2d 588, 591 (Iowa):

> The constitutional equal protection safeguard requires that the line drawn be a rational one, and that there be nondiscriminatory application of the law within the class established.

 This very equal protection problem was before the court in Matter of Chin v. Wyman, 41 Misc.2d 641, 645, 246 N.Y.S.2d 306, 312. After disposing of another contention the court said:

> Neither is the compact repugnant to the provisions of the Fourteenth Amendment to the United States Constitution in the sense that it denies these infants equal protection of the law or abridges their privileges and immunities as citizens

of the United States. The equal protection clause of the Fourteenth Amendment does not take from the States the power to classify in the adoption of laws designed to implement the authority of the State as *parens patriae* or to protect the public safety and welfare, and it does not appear that there has been any arbitrary or unreasonable classification in the compact, insofar as it applies to runaways. Since the compact applies uniformly to all runaways from states which are parties to it, petitioner may not complain that the infants have been denied equal protection of the law.

We agree with these views.

We hold that Charles' second ground is not meritorious, and we uphold the order of the Pottawattamie juvenile court.

Affirmed.