*348
 
 Opinion
 

 ASHBY, J.
 

 A juvenile court referee found appellant to be a person described by Welfare and Institutions Code section 602 in that he received stolen property in violation of Penal Code section 496. After a continuance of the disposition hearing under certain conditions, the referee ordered appellant taken from the custody of his mother and suitably placed. The disposition order was approved by a judge of the juvenile court and an application for rehearing by a judge was denied. The notice of appeal is “from the orders of the Juvenile Court sustaining the petition ... and declaring him a ward of the Court.”
 

 Robert Quinonez owned a bicycle which was stolen from the school where he and appellant attended on April 11, 1975. Ten days later he observed appellant riding the bicycle. Although the frame had been painted over, Robert recognized it by marks he had put on the bottom of the frame.
 

 Officer McCarroll of the Hawthorne Police Department arrived a few minutes later. He arrested appellant and read appellant’s rights to him from a card. Appellant, who was 14 years old, indicated he understood his rights, but Officer McCarroll did not ask him until later whether appellant wished to give up his rights. About half an hour later at the police station, Officer McCarroll read appellant’s rights to him again, asked if appellant wished to speak to him without an attorney present, and appellant indicated that he did. Appellant stated that the frame was given to him by another boy whom he refused to name. Appellant further stated that only the frame was stolen, that the rest of the parts on the bicycle were his, and that he had painted the frame.
 

 Appellant testified in his own defense. He got the frame from a boy named Michael who was moving away, in trade for a bike rim and some handlebars. Appellant put his own parts on the frame and painted the frame because “[i]t was all messed up” when he received it. Appellant testified that he did not know the frame was stolen until just before the police officer arrived, when Robert told him that it was his bike. When he made the statement to Officer McCarroll that the frame was stolen, he had just learned this fact.
 

 
 *349
 
 Discussion
 

 Appellant contends (1) that he did not intelligently waive his
 
 Miranda
 
 rights; (2) that if the previous contention is precluded by trial counsel’s failure to object to admissibility of appellant’s statement, appellant was denied the effective assistance of counsel; (3) that appellant’s right to apply for a rehearing pursuant to former Welfare and Institutions Code section 558 was “effectively denied him” because the application for rehearing was submitted by appellant’s mother personally and not by counsel; and (4) that the referee’s continuance of the disposition was in practical effect a period of probation, and that the suitable placement order was invalid in absence of compliance with the procedural requirements of Welfare and Institutions Code section 777 for modification of prior orders.
 

 Admissibility of Statements
 

 Appellant contends that because he was only 14 years old and the record discloses no prior experience with the police he was incapable of intelligently waiving his
 
 Miranda
 

 [1]
 

 rights. Trial counsel made no objection to the admissibility of appellant’s statements. Had an objection been made, the parties could have inquired further into the circumstances to determine if appellant was incapable of intelligently waiving his rights. In the absence of objection, the matter may not be considered for the first time on appeal.
 
 (In re Francis W.,
 
 42 Cal.App.3d 892, 902 [117 Cal.Rptr. 277];
 
 People
 
 v.
 
 Lindsey,
 
 275 Cal.App.2d 340, 342 [79 Cal.Rptr. 880];
 
 People
 
 v.
 
 Myers,
 
 262 Cal.App.2d 307, 310-311 [68 Cal.Rptr. 636];
 
 People
 
 v.
 
 Savala,
 
 10 Cal.App.3d 958, 961 [89 Cal.Rptr. 475]; see
 
 People
 
 v.
 
 Peters,
 
 23 Cal.App.3d 522, 529-532 [101 Cal.Rptr. 403].)
 

 There is no merit to appellant’s contention that the failure of trial counsel to object denied appellant the effective assistance of counsel. First, it appears from the record that counsel’s failure to object was not a result of ignorance of the facts or the law but was a tactical decision because h¿ considered appellant’s statements to be exculpatory. (See
 
 People
 
 v.
 
 Jenkins,
 
 13 Cal.3d 749, 755 [119 Cal.Rptr. 705, 532 P.2d 857].) Counsel argued that appellant’s possession of the bike was not disputed, that the only issue was whether appellant knew while he possessed it that
 
 *350
 
 it was stolen, and that all of appellant’s statements to the officer were consistent with his defense that he did not learn the bike was stolen until immediately prior to his arrest.
 

 Second, the record provides no support for the contention that appellant was incapable of waiving his rights. In
 
 People
 
 v.
 
 Lara,
 
 67 Cal.2d 365, 378-391 [62 Cal.Rptr. 586, 432 P.2d 202], our Supreme Court held that a minor’s age does not render him incapable of waiving his rights as a matter of law, and that whether the waiver was intelligently made must be determined from the totality of circumstances. (See also
 
 In re Dennis M.,
 
 70 Cal.2d 444, 462-464 [75 Cal.Rptr. 1, 450 P.2d 296];
 
 In re Linda D.,
 
 3 Cal.App.3d 567, 573-574 [83 Cal.Rptr. 544].) Officer McCarroll explained appellant’s rights to him from a card, both at the time of arrest and half an hour later at the police station. Appellant stated that he understood his rights. (See
 
 In re Linda D., supra.)
 
 The trial court also had the opportunity to observe appellant’s testimony on the stand, which appeared to indicate that appellant had no difficulty understanding the proceedings or the significance of his statements.
 

 Subsequently, during the disposition proceedings, it was disclosed that appellant had an I.Q. of 85 and was'apparently far behind at school. This fact does not preclude the admission of his statements. Such I.Q. is not severely low; formal I.Q. is not necessarily indicative of a minor’s life experience and understanding; and even minors with subnormal intelligence have been held capable of intelligently waiving their rights.
 
 (People
 
 v.
 
 Lara, supra,
 
 67 Cal.2d at pp. 377-378, 385-387.)
 

 Thus, trial counsel’s failure to make any objection as to appellant’s capacity to waive his rights did not deprive appellant of effective assistance of counsel.
 
 (People
 
 v.
 
 Lindsey, supra,
 
 275 Cal.App.2d 340, 342.)
 

 Application for Rehearing
 

 Appellant was represented by the public defender at the adjudication and disposition hearings. The final disposition hearing was held August 11, 1976. Appellant’s mother filed an application for rehearing pursuant to former Welfare and Institutions Code section 558 on August 20. Transcripts of the adjudication and disposition proceedings were prepared, and the application for rehearing was denied by a judge on September 13.
 

 
 *351
 
 Appellant contends that because the application for rehearing by appellant’s mother contained “little more than a rambling statement of the personal and financial difficulties she has experienced with raising appellant,” appellant’s “right to a rehearing was effectively denied to him and meaningless” without an application filed by counsel. The record on .appeal does not disclose why the application for rehearing was not prepared by counsel. In any event the court had the benefit of counsel’s views. Pursuant to
 
 In re Edgar M.,
 
 14 Cal.3d 727, 735-736 [122 Cal.Rptr. 574, 537 P.2d 406], the judge denied the rehearing only after reviewing the transcripts of the adjudication and disposition hearings, including the arguments which had been made by trial counsel to the referee.
 
 (In re Damon C.,
 
 16 Cal.3d 493, 497 [128 Cal.Rptr. 172, 546 P.2d 676].) The transcripts of trial counsel’s arguments amply supplied the judge with counsel’s views.
 
 (In re Damon C., supra.)
 

 Disposition Orders
 

 At the disposition hearing of April 21, 1976, the referee announced, “What I intend to do is put this matter over for certain terms and conditions; and one of them is school. ... [If] And if he has any problems at school, then he’s going to come out of his home. I can tell you that right now. As long as he goes to school and he obeys his mother, he has no problems. ... [f] ... You can stay home as long as you want to, as long as you obey the law, obey your mother and go to school. You will always stay home if you do that.”
 

 Appellant’s counsel said, “Submitted.” The court announced, “In the matter of Willie [T.], this matter will be continued for disposition for a period of three months. ... [If] Pending the disposition, these are the following conditions . . . .” The referee permitted appellant to remain home with his mother on a number of conditions, including that appellant attend school on a full-time basis at a school approved by the probation officer, promptly notify the probation officer of any absence, not be out after 9 p.m. without his mother’s permission, report to the probation officer as directed and obey all laws, rules, regulations, and orders of the court and the probation officer, not use or possess deadly weapons or alcoholic beverages or dangerous drugs, and not steal.
 

 On July 21, 1976, another disposition hearing was held. Appellant was represented by a different public defender who objected at the beginning of the hearing that, “[I]t seems to me, in effect, that the minor was given conditions of probation which is similar to or, in effect, it’s like being
 
 *352
 
 sent home on probation. [H] It is my position-that they would have to file a 777 hearing in order to change the disposition. They’re recommending suitable placement. [1] I know that formerly he was not sent home on probation, and it was a continued disposition, but conditions were imposed on the minor; and I think that that is the same thing.” The referee rejected this contention because there was no objection at the previous hearing to the three-month continuance, and explained, “In other words, I could have sent the minor away at that time, but I allowed him to go home on certain terms and conditions, to see if he could fulfill those conditions. He knew specifically that he had certain conditions that he had to fulfill and if he didn’t fulfill those conditions, he’d have to answer for them on the day of the disposition. I do that, but I do that many times when I think it is warranted. Whenever I do it, it’s only for the benefit of the minor. [1] If I have a question, a serious question, in mind as to whether I should take a minor out of his home and send him to camp or send him to placement or let him stay at home, I give him the benefit of the doubt and I continue it for three months and I impose certain conditions. [1] Sometimes it works and sometimes it doesn’t. A great majority of the times it works, but once in a while it doesn’t work, like this particular case, when it comes back and I get a report like this. . . .” The referee expressed his concern over indications in the probation officer’s supplemental report that appellant had been truant on many occasions and was staying out at nights beyond his mother’s control. The referee continued the disposition for another three weeks for a psychiatric clinical report.
 

 On August 11, 1976, the third disposition hearing was held. The referee declared appellant a ward of the court under Welfare and Institutions Code section 602 and ordered him suitably placed, stating, “In making the suitable placement order, the Court feels that home on probation has not been a satisfactory avenue for rehabilitation; that he is beyond the control of his mother with whom he resides; that suitable placement should be the type of placement where he will get psychiatric counseling on at least a weekly basis and that there should be remedial education on the grounds for Willie and that is the type of placement that it is to be, remedial education on the grounds and at least a weekly psychiatric counseling visit. . . .”
 

 Appellant contends that the “continuance” of April 21 with certain conditions was, in practical effect, not merely a continuance but an order placing appellant on probation. He contends that the court could not
 
 *353
 
 thereafter modify that order by removing appellant from the custody of his mother for suitable placement, without complying with the procedures for modification of prior orders in Welfare and Institutions Code section
 
 777.
 

 [2]
 

 In the particular circumstances of this case we agree.
 

 Welfare and Institutions Code section 702 states that prior to hearing evidence on the question of the proper disposition to be made of the minor the court “may continue the hearing, if necessary, to receive the social study of the probation officer or to receive other evidence on its own motion or the motion of a parent or guardian for not to exceed 10 judicial days if the minor is detained during such continuance, and if the minor is not detained, it may continue the hearing to a date not later than 30 days after the date of filing of the petition. The court may, for good cause shown continue the hearing for an additional 15 days, if the minor is not detained. The court may make such order for detention of the minor or his release from detention, during the period of the continuance, as is appropriate.”
 

 Thus the order of April 21 purporting to continue the disposition for 3 months violated the 45-day time limit in section 702. Although the order was intended to be for appellant’s benefit, the referee’s good intentions cannot justify disregard of the legislative intent that the disposition be made within the 45-day time limit. Viewed realistically, the continuance was an order placing appellant on probation (see Welf. & Inst. Code, §§ 725, 727, 730, 731), the violation of which resulted in appellant’s being removed from the custody of his mother. This procedure was prejudicial to appellant because the referee treated the subsequent
 
 *354
 
 proceedings as if they involved an original disposition rather than “[a]n order changing or modifying a previous order by removing a minor from the physical custody of a parent . . . .” (Welf. & Inst. Code, § 777.) The latter type of order requires compliance with a different set of statutory and judicial standards than an original disposition order. (See
 
 In re Arthur N.,
 
 16 Cal.3d 226, 235-240 [127 Cal.Rptr. 641, 545 P.2d 1345];
 
 In re Donna G.,
 
 6 Cal.App.3d 890, 894-895 [86 Cal.Rptr. 421];
 
 In re William S.,
 
 10 Cal.App.3d 944, 950-951 [89 Cal.Rptr. 685];
 
 In re Neal D.,
 
 23 Cal.App.3d 1045, 1049-1050 [100 Cal.Rptr. 706];
 
 In re Denise C.,
 
 45 Cal.App.3d 761, 766-767 [119 Cal.Rptr. 735].)
 

 Respondent suggests that this point be deemed waived by appellant’s failure to object on April 21 to the three-month continuance. We disagree. As we have pointed out, the practical effect of the referee’s order was to place appellant on probation, not merely to continue the matter. Acceptance of probation does not constitute waiver of procedural requirements for revocation of probation. (Cf.
 
 People
 
 v.
 
 Vickers,
 
 8 Cal.3d 451, 458 [105 Cal.Rptr. 305, 503 P.2d 1313].) In
 
 In re Gonzales,
 
 43 Cal.App.3d 616, 618-619 [118 Cal.Rptr. 69], the trial court was inclined to sentence defendant to state prison, but, on the assumption the Adult Authority would revoke his parole on a prior case, granted probation on the condition that parole be revoked in the other case. The defendant accepted those terms and the trial court continued the hearing to determine the Adult Authority’s action. When it learned that the Adult Authority had reinstated defendant on parole, the trial court revoked probation. The appellate court held the defendant could challenge the condition notwithstanding that he accepted it.
 

 The order appealed from is reversed as to disposition and the cause remanded for further disposition proceedings. In all other respects the order is affirmed.
 

 Kaus, P. J., and Hastings, J., concurred.
 

 A petition for a rehearing was denied July 21, 1977, and respondent’s • petition for a hearing by the Supreme Court was denied August 25, 1977.
 

 [1]
 

 Miranda
 
 v. Arizona, 384 U.S. 436. 444-445 [16 L.Ed.2d 694, 706-707, 86 S.Ct. 1602, 10 A.L.R.3d 974].
 

 [2]
 

 Welfare and Institutions Code section
 
 777
 
 provides: “An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after noticed hearing upon a supplemental petition.
 

 “(a) The supplemental petition shall be filed by the probation officer in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor.
 

 “(b) Upon the filing of such supplemental petition, the clerk of the juvenile court shall immediately set the same for hearing within 30 days, and the probation officer shall cause notice thereof to be served upon the persons and in the manner prescribed by Sections 658 and 660.
 

 “(c) An order for the detention of the minor pending adjudication of the petition may be made only after a hearing is conducted pursuant to Article 15 (commencing with Section 625) of this chapter.”